IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TERRY C. JOHNSON, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>MICHELLE SADDLER, et al. )<br>)<br>)<br>  Defendants. ) | No. 10-cv-3279 |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, proceeding pro se, is detained in the Rushville Treatment and Detention Center. He pursues claims arising from incidents which occurred from July 1, 2010 to July 14, 2010. Defendants move for summary judgment, relying in part on a DVD recording which directly contradicts many of Plaintiff's allegations. Defendants also submit their own affidavits which negate Plaintiff's claims.

The DVD shows that many of Plaintiff's allegations are fabrications. Further, Plaintiff does not dispute the truth of Defendants' affidavits or of Defendants' proposed undisputed facts,

even though Plaintiff was warned that failure to respond with admissible evidence would result in the Court accepting those facts as true.

Accordingly, summary judgment is granted to Defendants. Further, Plaintiff is directed to show cause why sanctions should not be imposed against him pursuant to Federal Rule of Civil Procedure 11 for making false allegations and filing this lawsuit for the purpose of harassment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).

"In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." <u>McAllister v. Price</u>, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. <u>Id.</u>

## MOTION FOR THE APPOINTMENT OF COUNSEL

Plaintiff asks the Court to attempt to recruit pro bono counsel to represent him.

The Court may ask an attorney to represent an indigent civil litigant pro bono, but may not require the attorney to accept the invitation. 28 U.S.C. § 1915(e)(1). In deciding whether to attempt to recruit pro bono counsel, the Court asks: 1) has the plaintiff made reasonable efforts to obtain counsel on his own; and, 2) is the plaintiff competent to proceed in light of the difficulty of the case.

Bracey v. Grondin, 712 F.3d 1012, 1016 (7th Cir. 2013)(*citing* Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007). "[T]he district court must consider both halves of this equation—the difficulty of the case and the competence of the litigant." Id. Relevant factors include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, physical and mental health, and ability to conduct discovery. Id. n. 3 (*citing* Pruitt, 503 F.3d at 655); Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013).

   Plaintiff's claims are relatively simple. He personally experienced all the alleged adverse events set forth in his amended complaint and had ample time for discovery. He has remained in the same facility where the events occurred, easing his ability to investigate and conduct discovery. Plaintiff's professed discovery difficulties are due to Plaintiff's own delay in pursuing discovery, and, as discussed below, the fact that no evidence actually exists to support Plaintiff's claims. Further, Plaintiff is competent to proceed pro se. According to a review of computerized records, www.pacer.gov, Plaintiff has significant federal litigation experience. Plaintiff has filed 14 cases in federal court over the past 16 years

and also has experience litigating in state court, <u>Johnson v. Illinois Dept. of Corrections</u>, 368 Ill.App.3d 147 (4th Dist. 2006). Plaintiff's pleadings in this case and in his other cases demonstrate that Plaintiff has a significant knowledge of relevant law, civil procedure, and the facts necessary to support Plaintiff's claims. The Court therefore concludes that Plaintiff is competent to proceed pro se in light of the nature of his claims.

## ALLEGATIONS

Plaintiff alleges that, on July 2, 2010, officers in riot gear came to Plaintiff's door and "without warning . . . or any justification opened the door." (Am. Compl. ¶ 21.) Defendant Kerr allegedly "savagely punched" Plaintiff while Plaintiff was restrained. <u>Id.</u> ¶¶ 22-24. Other Defendants allegedly tried to break Plaintiff's wrist, fingers, arms, and neck, and tried to smother Plaintiff. <u>Id.</u> ¶¶ 25, 29. Defendant Kerr then allegedly "sexually assaulted Plaintiff by ramming his helmet into Plaintiff['s]buttocks while he was nude. Kerr continued to rub [his] helmet in an [sic] sexually aggressive manner in retaliation on my complaints on him." <u>Id.</u> ¶ 32. The medical Defendants allegedly failed to examine or treat Plaintiff's injuries from the purported excessive force.

Additionally, Plaintiff alleges that he was "placed inside of a filthy cell, that had blood, food, urine, hair and live and dead insects, on the floor, walls, sink and toilet, which each def's . . . all knew." Id. ¶ 34. Plaintiff allegedly had no protection from the "severe cold cell temperature" and was allegedly denied medical care, sheets, blankets, clothing, and cleaning supplies. Id. ¶ 36.

## DISCUSSION

Plaintiff does not dispute Defendants' proposed facts, Defendants' affidavits, nor the accuracy of the DVD recording of the incident (d/e 115, DVD stored in Court's vault). Plaintiff instead asks to reopen discovery so that he can find out the names of other residents who might be witnesses and to seek other discovery.

Plaintiff does not adequately explain why he could not discover the names of potential witnesses during discovery. As the Court explained in its prior order, Plaintiff had over eight months to conduct discovery. Federal Rule of Civil Procedure 56(d) is not a mechanism to conduct discovery that should have been conducted when discovery was open. Further, Plaintiff already knew of at least one resident witness—the witness Plaintiff greets near the end of the DVD recording who is named as resident Carpenter in Plaintiff's

amended complaint. Plaintiff has not even filed the affidavit of resident Carpenter in response to the summary judgment motion.

In any event, no affidavit could contradict what the DVD shows. The Supreme Court held in <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) that a properly authenticated video tape trumps a party's contrary version of events. The issue in <u>Scott</u> concerned a police car chase. The plaintiff in <u>Scott</u> alleged that an officer had rammed into the plaintiff's car without justification, rendering the plaintiff a paraplegic. However, the officer had recorded the chase on video. Contrary to the plaintiff's averments, the recording showed that the plaintiff had led officers on a "chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." <u>Scott</u>, 550 U.S. at 380. The Supreme Court held that the video tape controlled over the plaintiff's own version of events at the summary judgment stage, reasoning that the plaintiff's story was "so utterly discredited by the record that no reasonable jury could have believed him." 550 U.S. at 380-81.

Like <u>Scott</u>, the video recording in this case "utterly discredit[s]" many of Plaintiff's allegations. In the recording, Plaintiff refuses to

comply with several orders to cuff up and moves boxes in front of his door to prevent Defendants' entry. This directly contradicts Plaintiff's allegation in his amended complaint that Defendants "without warning . . . or any justification opened the door." (Am. Compl. ¶ 21). Plaintiff continues his belligerence after Defendants enter Plaintiff's room, refusing to comply with orders and requiring Defendants to carry him. Plaintiff threatens to get even with Defendant Kerr, whom Plaintiff repeatedly accuses of "sucker punching" Plaintiff.

Defendants, in contrast to Plaintiff, act in a measured, calm, and professional manner. At no time does the recording show Defendants trying to break Plaintiff's bones or neck or trying to prevent Plaintiff from breathing. No injuries are visible on Plaintiff's face or otherwise. The cell Plaintiff is placed in is not, as plaintiff alleges in his amended complaint, "filthy" with "blood, food urine, hair and live and dead insects on the floor, walls, sink and toilet."

Two portions of the recording show the ceiling or floor instead of Plaintiff, and Plaintiff in part of the video is obscured by the officers. However, the sound is on throughout. At no point does Plaintiff behave or sound like he is being subjected to excessive

force or sexual assault. Each time Plaintiff complains of discomfort, Defendants respond by trying to reduce Plaintiff's discomfort. For example, Defendants carry Plaintiff when Plaintiff refuses to walk, but then put Plaintiff down when Plaintiff says he is ready to walk, even though Plaintiff again becomes argumentative once Defendants put Plaintiff down. After Plaintiff is taken to a different cell, Plaintiff's cloths are removed and a jumpsuit is placed on Plaintiff. At no point does Plaintiff complain about the size of the jumpsuit or Defendant Kerr sexually assaulting Plaintiff. Nor is the jumpsuit humiliatingly small, as Plaintiff alleges in his amended complaint.

Moreover, the DVD is not the only evidence. Plaintiff does not dispute any of Defendants' proposed undisputed facts. According to those facts, which are supported by affidavits, Plaintiff had been yelling and threatening from his room and had covered his door window to hinder security from looking inside Plaintiff's room. (Defs' Undisputed Facts 8-9.) Plaintiff does not dispute that he "was in a crouched stance and was physically combative and resisting." (Defs. Undisputed Fact 26.) Plaintiff does not dispute that he did not complain of any serious medical needs when the

nurses came to visit him over the following days. Plaintiff also does not dispute Defendants' evidence which shows that the temperature in the cell was 72 degrees, not the "severe cold" Plaintiff alleges. Lastly, Plaintiff does not dispute that he was allowed to leave his room from July 2, 2010 to July 14, 2010, to visit the dayroom, library, gym, and outside patio. (Def. Undisputed Fact 66, d/e 110.) In short, Plaintiff offers no evidence to support any of his claims.

Under Federal Rule of Civil Procedure 11(b), Plaintiff's signature on his complaint acts as a certification by Plaintiff that his factual allegations have evidentiary support and that his complaint was not filed "for any improper purpose, such as to harass . . . ." In the Court's opinion, Defendants' evidence shows that Plaintiff's allegations in his amended complaint are intentional fabrications, made for the purpose of harassing Defendants. Plaintiff will be directed to show cause why he should not be sanctioned for intentionally making false allegations in his complaint.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's motion to request counsel is denied (d/e 120).

2. Defendants' motions for summary judgment are granted (d/e's 99, 109).

3. By September 9, 2013, Plaintiff is directed to show cause why he should not be sanctioned pursuant to Federal Rule of Civil Procedure 11 for intentionally making false allegations in his amended complaint concerning the alleged excessive force, serious medical needs, and conditions of confinement.

4. Judgment will be entered in favor of Defendants after the Court decides whether sanctions should be assessed against Plaintiff. Defendants may file a timely motion for costs after judgment is entered.

5. By August 30, 2013, Defendants are directed to file: 1) Plaintiff's trust fund ledgers from January 1, 2013 to the present; and, 2) an affidavit setting forth whether Plaintiff earns points, and, if so, how many points Plaintiff earned per month on average from January 1, 2013 to the present.

ENTER:      August 21, 2013

FOR THE COURT:

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
